## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                  Crim. No. 04-1850 JH

KIPP LINZE POLSTON,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Kipp Linze Polston's

("Defendant") Motion for Discovery, filed December 2, 2004, **[Doc. No. 29]**.  The Court, having

considered the motion and relevant law, and being otherwise fully informed, hereby finds that

Defendant's Motion for Discovery is well taken in part and will be granted in part.

### BACKGROUND

At approximately 6:55 p.m., on June 10, 2004, United States Border Patrol (USBP)

Agent Samuel Solis was performing primary inspection duties at the U.S. Border Patrol

permanent checkpoint on I-25 at mile marker 26 when a light blue Chevrolet Silverado pickup

truck pulled into the checkpoint.  Defendant was driving the vehicle, and Defendant's son was

seated in the passenger seat of the truck.

Agent Solis questioned Defendant about his citizenship and driving route, and Defendant

stated that he was a United States citizen and that he was coming from Tucson, Arizona.  Agent

Solis continued to make additional inquiries, and the United States claims that during those

inquiries, Defendant visibly became more nervous.  When Agent Solis asked Defendant for his registration paperwork, the United States maintains that Defendant searched through his glove compartment and handed Agent Solis his registration documents with hands trembling "almost uncontrollably."  Defendant denies that he was nervous or that his hands were shaking.  Agent Solis examined the registration documents and asked Defendant if he would consent to a canine inspection of his truck.  According to the United States, Defendant "gave verbal consent with a 'disapproving look.'"  Defendant claims that he did not consent to a canine or other search of his truck or belongings.

The United States maintains that Agent Solis referred Defendant to a secondary inspection area where a canine search was run by USBP Agent Whitman.  The United States contends that the canine "Rakky" alerted.  Defendant claims that he was watching the dog and his handler at all relevant times, and that the dog did not passively or actively alert.

After the canine allegedly alerted, Agent Whitman conducted a hand search of the bed of Defendant's truck.  Agent Whitman found two large plastic trash bags that contained bundles wrapped in brown packing tape.  A green leafy substance was found in each bundle that field tested positive for marijuana.  A tin box containing several marijuana roaches also was found in the passenger compartment under the driver's seat.

Defendant was arrested and charged with possession of less than 50 kilograms of marijuana with the intent to distribute.  Defendant waived a preliminary hearing on June 17, 2004, and the court ordered that he be detained on that date.  An indictment was filed on September 16, 2004.  Defendant was arraigned on September 21, 2004, and entered a plea of not guilty.

Defendant filed a motion to suppress on October 18, 2004.  Defendant claims that he needs the discovery requested in this motion to proceed with the motion to suppress.

## DISCUSSION

Dog alerts, without more, establish probable cause to conduct searches and seizures.  *See, e.g.*, *United States v. Morales-Zamora*, 914 F.2d 200, 205 (10th Cir. 1990).  In *United States v. Ludwig*, however, the Tenth Circuit held that a dog alert might not give rise to probable cause if the particular dog had a poor accuracy record.  *See* 10 F.3d 1523, 1528 (10th Cir. 1993).

Defendant argues that in order to determine whether "Rakky" had a sufficient accuracy record at the time of the search, Defendant requires certain records from the United States, including (1) "all videotapes showing incidents in which 'Rakky' was used in law enforcement, from June 10, 2001 to the present," (2) "all records[] . . . relating to the training and use of 'Rakky,'" (3) "all [documents] relating to the training of drug detector dogs for the . . . [USBP], including certification standards for 'Rakky' and the standards of any and all canine organizations to which the USBP may belong," (4) "all [documents] relating to the field use of drug detector dogs," (5) "all news articles, recordings or videotapes about 'Rakky,'" (6) "all [documents] relating to the last date of certification testing for 'Rakky,' including any recordings . . . of the actual testing," (7) "all documentation listing all drugs 'Rakky' is trained to detect, including synthetic drugs," (8) "all documentation defining the 'final response,' or form of alert, that 'Rakky' was trained to make upon detecting drugs," (9) "all documentation identifying 'Rakky's" primary reward," (10) "all documentation of the specific training aids used to train 'Rakky,' including . . . the chemical composition, purity and packaging of the controlled substances used in

such training," (11) "all documentation of the laboratory analysis of all seizures of suspected controlled substances based on a final response, or alert, by 'Rakky,'" (12) "all documents . . . describing . . . the minimum departmental standards for proficiency training for drug detecting dogs," (13) "all documents . . . describing . . . the response/find ratio that canine search teams must maintain to remain in field service," and (14) "all documents[] . . . describing the number of occasions during which USBP officers founds probable cause to search on the basis of an alleged final response, or 'alert,' by a drug detecting dog."

The United States has offered only to produce documentation showing that "Rakky" was certified on the date of Defendant's arrest.  In support of its position, the United States cites *United States v. Gonzalez-Acosta*, in which the Tenth Circuit affirmed the district court's denial of a defendant's motion for pretrial production of the training file of the dog that sniff-searched the defendant's vehicle.  *See* 989 F.2d 384, 388-89 (10th Cir. 1993).  The Tenth Circuit held that the district court did not abuse its discretion in denying production because the materials requested were not relevant to the case.  *See id.* at 389.  The *Gonzalez-Acosta* court explained that the dog was "certified on the day in question" and that the dog "properly alerted to the presence of contraband" in the defendant's case.  *See id.*

The United States maintains, upon information and belief, that "Rakky" was certified and trained to detect the controlled substance marijuana on the date of Defendant's arrest.  The United States further contends that it can show that "Rakky" properly alerted to the presence of contraband.  Therefore, under *Gonzalez-Acosta*, the United States claims that it is not required to produce the materials requested by Defendant.

Several months after its holding in *Gonzalez-Acosta*, however, the Tenth Circuit proclaimed in *Ludwig* that a poor accuracy record may negate probable cause. *See supra* p. 3. In *United States v. Wood*, the District of Kansas discussed the *Ludwig* and *Gonzalez-Acosta* decisions in the context of determining whether a defendant was entitled to production of certain canine records. The *Wood* court noted that although *Ludwig* discussed reliability, it did not decide what establishes the reliability of a dog and whether the reliability must be proved in each case. *See* 915 F. Supp. 1126, 1135 (D. Kan. 1996). The court further noted that *Ludwig* did not hold that an alerting dog's reliability was contingent on more than the fact that the dog had been trained and certified. *See id.* If it had, an *en banc* overruling of *Gonzalez-Acosta* would have been required. *See id.* At most, *Ludwig* recognized there may be circumstances that so undermine a particular dog's reliability as to affect the probable cause determination. *See id.*

To prove a dog's reliability under both *Ludwig* and *Gonzalez-Acosta*, the *Wood* court held that the United States was required only to produce records of the dog's certification and recertifications and of the dog's structured training over a reasonable period of time. *See id.* at 1133, 1136; *see also United States v. Lambert*, No. 04-40102-01-SAC, 2004 U.S. Dist. LEXIS 26252, *22 (D. Kan. Dec. 1, 2004) (defendant only made showing of materiality for one year of training and certification records prior to the search).[1] *Wood* further held that a more thorough

---

[1] Other courts, in contrast, have held that the United States need not produce records to establish reliability but rather may establish reliability through testimony alone. *See, e.g.*, *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994); *United States v. Hill*, 195 F.3d 258, 273-74 (6th Cir. 1999); *United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999); *United States v. Stevenson*, 274 F. Supp. 2d 819, 822-23 (S.D. Tex. 2002); *United States v. Outlaw*, 134 F. Supp. 2d 807, 812 (W.D. Tex.), *vacated in part on different grounds*, 319 F.3d 701 (5th Cir. 2001).

investigation may be required in certain circumstances, such as where the reliability presumed from certification and training is subject to question.[2] *See id.* at 1136; *see also Lambert*, 2004 U.S. Dist. LEXIS 26252, *21-22.

Here, Defendant is entitled to records related to "Rakky's" training, certification, and recertifications over a reasonable period of time.  In addition, because Defendant has alleged that "Rakky" did not alert on the day in question, Defendant also is entitled to documentation demonstrating that "Rakky" was reliable at the time of the search.  Documentation indicating "Rakky's" percentage accuracy over a reasonable period of time is sufficient to indicate on the day in question whether "Rakky" was reliable.  *See, e.g.*, *United States v. Lambert*, 834 F. Supp. 1318 (D. Kan. 1993) (records of dog's training, certification, and past success rates were relevant for the defendant's cross examination of two dog handlers), *rev'd on different grounds*, 46 F.3d 1064 (10th Cir. 1995); *compare United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir. 2003) (discovery of a dog's qualifications is mandatory, including the dog's performance and training records).  In addition, to evaluate whether "Rakky" alerted on the day in question, Defendant also is entitled to documentation defining "Rakky's" "final response" or form of alert.  These

---

[2] For example, additional investigation may be required where the dog's training or certification is substandard, the health of the dog was such as to affect reliability, or the circumstances of the particular search raise issues regarding the dog's reliability.  *See Wood*, 915 F. Supp. at 1136.  In addition, one District of New Mexico court has held that where there is evidence of false alerts or a lack of corroborating circumstances, additional discovery may be necessary.  *See United States v. Florez*, 871 F. Supp. 1411, 1420 & n.17 (D.N.M. 1994).  Here, Defendant has not provided any evidence of substandard training or certification, attacked "Rakky's" health, argued that the circumstances of the search give rise to questions about "Rakky's" reliability, or indicated that "Rakky" falsely has alerted in other cases.  Accordingly, in depth discovery in this case is not appropriate at this time.

documents are material to the preparation of the defense.  *See* Fed. R. Crim. P. 16(E).

## CONCLUSION

For the foregoing reasons, **IT THEREFORE IS ORDERED** that Defendant's Motion for Discovery, filed December 2, 2004, **[Doc. No. 29]**, is hereby **GRANTED IN PART** as follows:

1.     The United States is ordered to provide documents related to "Rakky's" training from June 10, 2003, through June 10, 2004;

2.     The United States is ordered to provide documents related to "Rakky's" certification(s) and/or recertification(s) from June 10, 2003, through June 10, 2004;

3.     The United States is ordered to provide documents, if any, demonstrating "Rakky's" percent accuracy rating from June 10, 2002, to the present;

4.     The United States is ordered to provide documentation defining the "final response" or form of alert that "Rakky" was trained to make upon detecting drugs at the time of the search conducted on June 10, 2004;

5.     The United States shall comply with the terms of this Memorandum Opinion and Order within ten (10) days from the date of this Order.


Dated this 13th day of January 2005.



JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

7